May it please the Court, my name is Albert Zakarian. I'm here with my colleague Robert Apgood. We're appearing on behalf of the appellant and cross appellee, Scott Webb. I don't envy this Court on this particular case. As it comes to you, one of some 24,000 odd cases over the last several years. Thankfully, the debate of all these cases being filed is over and we are now in the clearing up stages. This particular case... Mopping up? Is that what it is? I'm sorry, Your Honor? We're in the mopping up stage? Yes, Your Honor. You won't see, hopefully, as long as the DIRECTV signal remains safe and secure, thousands more of these cases being filed, I hope, for their sake and ours. This case comes to this Court as a result of a bench trial in January of 2004 before the Honorable Stephen Wilson. My colleague and I were called in at the last second, literally 48 hours before trial, to try the case, so we had nothing to do with the preparation of it at that time. During the bench trial, there were only a couple witnesses per side and there was a finding with regard to liability and then damages. And we're here appealing four points on behalf of Mr. Webb. One of those points, the first point in the briefing, is whether DIRECTV has standing to sue as an aggrieved person under 47 U.S.C. 605E4. That particular argument, if the Court will allow, I would like Mr. Apgood to address as he's fully prepared to discuss that issue. The other three points are whether Judge Wilson properly applied a continuing violations doctrine in order to save the otherwise untimely 605 claims that they brought in the case, and whether there was sufficiency of evidence in the case for Judge Wilson to find that there was any illegal interception by Mr. Webb at all. Finally, the fourth point that we address is damages, whether Judge Wilson was within the statute and within his rights, both evidentiary and legally, to impose the damages that he did. In this case, and in my opinion, based on the briefing as well, the incredible finding that Mr. Webb was stealing DIRECTV signals from August 31, 2000 right up to the day he stepped into the courtroom for trial. I will address the first issue that I intend to address, and that is first, 47 U.S.C. 605A. Judge Wilson, I think, does a very nice job in his opinion discussing why 605A has a one-year statute of limitations. Now, the problem with this particular issue is that Congress, in its infinite wisdom, decided not to provide any express statute of limitations. So it was debated for quite a while during these cases, over four years, and in this case here, what that statute was. DIRECTV's original position was that it was a three-year copyright statute, and that's what should be borrowed. That comes out of the Prostar v. Massachi case. When the DIRECTV case in Massachusetts started to be litigated, that, the court started to move away from that. And DIRECTV's position initially was that. Mr. Webb's position, the briefing down below initially, was that if you have to provide any close federal analog, you would use the 18 U.S.C. 2520 case, because they both address the same acts, and they're pretty similar. Those were our positions. Judge Wilson found, and I think properly, as I read his opinion, that the U.S. Supreme Court set up the clear standard that when you have no express statute of limitation, you use the most closely analogous state statute. You borrow from the state first, unless it offends some other elements. In this case, the court found that none of the elements were offended, and that California local penal code statutes should apply in a one-year statute. And he then went through in his opinion and said that DIRECTV, the DIRECTV cause of action under 47 U.S.C. 6058 and E-4 were untimely, unless they were saved by either equitable tolling or the continuing violations theory. Equitable tolling, he properly concluded, was a non-issue, once DIRECTV got evidence of violations, which was the May 25, 2001 raid. So he dispensed with that rather quickly. So then we're down to the continuing violations theory. And we're down to the 605A. And what he did is he used that theory to say that despite the fact that DIRECTV's claims were untimely under 605A, given the one-year statute of limitations, that they were saved by continuing violations doctrine. And I don't quite understand how that can work, but our argument against that is clear. We adopted the position of Judge Baird, who is also in the district court in the L.A. area, and she, in a similar case, involving DIRECTV versus Scott Corbin, of which I was counsel, we went to trial in April. In that case, she said that the continuing violations theory would not apply to the 605 instance, because it effectively eliminates the knowledge requirement from the 605, from the borrowed statute of limitations. And it is my position that it would eliminate the statute of limitations altogether. Because if you have a statute of limitations within one year, you have to bring your cause of action within one year of having that knowledge. And in this case, there's no dispute that the knowledge that they had came on May 25, 2001. Then what would be the purpose of that statute of limitations at all, if you could just continue to extend it ad infinitum using a continuing violations theory? Most of the cases you can continue it only because there's a continuing violation. In most statute of limitations, you're talking about a more finite action. You robbed a bank. Well, if you robbed a bank, you could have robbed a bank in year 2002. He's not robbing the bank today, because he did it then. But if you're talking here, at least with regard to the interception side, unless there's affirmative evidence that the defendant has disconnected and is no longer intercepting, why isn't it not continuing? That is a good question, Your Honor. And the answer is as follows. Number one, I think Your Honor has flipped the burdens of proof. It is DIRECTV's requirement to show that he continued to intercept. And in order for the, in order for the, in order for the, in order for the defendant to continue to intercept, you have to show that he continued to intercept. And in order for the defendant to continue to intercept, you have to show that he continued to intercept. And in order for the defendant to continue to intercept, you have to show that he continued to intercept. Yeah, but if somebody's got equipment, I mean, you've got a television set at your house. It gets turned on most every day. And I don't think we suddenly assume that on today, it didn't get turned on. We don't expect the DIRECTV to have an investigator peering through the windows to see if the TV's on. And we've seen a lot of fraud and sweeping inference from that evidence. But as the Eleventh Circuit indicated and alluded to in DIRECTV versus TreeWergy, they said the other problem that we have with it, and they were addressing, of course, the 2512 issue, which is completely resolved at this point. But they were addressing the actual inference that DIRECTV wanted to draw, and that was that mere possession of a device alone means that you should infer somebody was using it. And the problem with that is you run into the constitutional cases, and you're facing controversy requirement. Just because they're Mr. Webb had a possession of one or 57 or one million devices doesn't necessarily mean that he was pirating. And certainly... Well, let's stop there. One, I can maybe understand your argument. We've all bought things that don't work, and it's not worth sometimes taking it back. Somebody buys 57 over a period of time, I think we can assume that technically, at least at some point in time, it worked. And you don't keep buying those things unless there's an expectation of using them. So you can argue that maybe direct evidence should be required, but as a finder of fact, I don't have difficulty inferring, you know, if there's smoke, that there's a good chance there's fire there someplace. Somebody's bought 57 pirate devices. I don't think they're using them as doorstops. I think he's using them to pirate the signal. Fair enough. Inference. And I understand that. Now, let's look at the facts of this case, however. He stopped buying those devices on December 31, 2001. So... And in October of 2002, DirecTV's signal, of which he could have used the devices to pirate, was cut off and dead. So what you have is you have how far does this reasonable inference, does the fire burn forever now? And that's what you're arguing. That's what you're suggesting. You're suggesting that because he bought devices up to a certain point, I can ride this inference right into the future, which is exactly what Judge Wilson did. We're not riding well into your next issue, but that's fine. I will confess this case has enough paper. I have two files. And I apologize for that. And I understand. The other I have in Honolulu. And so my papers on that are in Honolulu. But I recall going through the evidence, and I didn't find all that much at trial. And granted, I didn't read the entire trial transcript. But I didn't find nearly so much at trial that, in fact, the defendant was defending based on, well, yeah, I had these things, but they didn't work anymore because of what DirecTV did. Well, you're correct about that, because the defense at trial was he did not steal any signals at all. Well, the problem for me is this isn't a trial. This isn't a second chance for the defendant to regroup and come up with another theory. Right. But the defendant didn't come up with another theory. What was said at trial was there was testimony from Mr. Risler, DirecTV's corporate representative, and he acknowledged as part of his testimony, which he does pretty much every time I've seen him, he'll go through that there were devices out there used to steal and that DirecTV came up with countermeasures that were used to defeat those devices. And at one point, they instituted something you might recall reading Black Sunday. This is the day where they allegedly fried, so to speak, a large portion of the hacked card that Mr. Webb was alleged to have been using. And then it goes from there. And then that hacked card finally in October of 2002 was turned off completely and rendered useless. Now, that was not only part of the trial, but it was also part of the expert reports that prior counsel before we got to the courthouse had stipulated in DirecTV's supplemental excerpts of record, page 74 specifically, one of their reports states that we have these different generations of cards, and as time went on, in order to defeat piracy, we turned them off. Well, the P2 card or period two card is the one that they turned off, and that was the basis for the DirecTV's evidence at trial. And in fact, Mr. Rissler testified in response to the questions as to what the devices Mr. Webb was purchasing could be used for. It was the P2 card. So at some point, factually, the evidence shows that he was no longer able to pirate after a certain period of time. And you're right, as I was thinking about this yesterday, the issues are just intertwined. It's almost impossible to discuss them. We can talk about the statute of limitations issue and then we start getting into damages, et cetera. But that was... Speaking of the damages, what we're talking about now is 605, right? So we're talking about a thousand and a ten thousand? You're correct about the damages, Your Honor. But as I considered this case this morning, we're not here saying that Judge Wilson incorrectly applied damages for 605. If, in fact, the 605 violations are timely, then I think he properly applied them. The damage argument that we were going after clearly in the brief is the 2520C, the 1,237 days. So if this Court were to find that it was timely, that the continuing violations theory is properly applied, however it wants to come out, the damages is not an issue for 605. And we don't argue that in our brief, and we're not arguing it here. The damage issue that I have a problem with is the August 31, 2000, to the day of trial. And our primary problem with that is I just don't see one single piece of evidence that would point to the fact, to the Court, that Mr. Webb was pirating from August 31, 2000 all the way up to the day he stepped into the courtroom. There's just no factual evidence presented at trial or otherwise. In fact, the opposite is true. When in response to my cross-examination, I asked Mr. Rissler, I said, what is the evidence DirecTV has? What do you consider for finding that he was continuing to pirate signals? And he said, well, we've got device purchases. I said, okay. He said, well, we have a particular message, an IVAC message that showed up on his girlfriend's account that he was cohabitating with. I said, okay. And that was in January or February of 2001. I said, what else do you have? Nothing. There was nothing. So there were no indications for the Court to believe that this guy was continuing to pirate with these now useless devices since October of 2002, at a minimum, all the way up to the day he stepped into the courtroom. There's just no factual basis for it. That's 1,237 days. And that was our argument on that. And this Court would have to find that Judge Wilson committed clear error in making such a factual finding. And I submit to you that you can certainly do that because you can look at the record and say that there was nothing to conclude that. But all he says is because he had devices, I infer that he was using them. That's all he says. That's dangerously close to the strict liability position that the Eleventh Circuit warned about in the Trewergy case. And we don't think that that is proper application of the law. Certainly he has the opportunity in 2520C to give statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000. Well, obviously, in this case, it was $100 a day. But I submit that if the judge is going to use the $100 a day computation, he then has a burden to explain how he's arriving at that. And there's no explanation here. There's no evidence. It's just exactly what Your Honor said. Once the fire is burning and once I see the smoke in the fire, I guess it just burns ad infinitum forever. And there was just nothing at trial submitted by anybody to show that he was continuing to pirate during all that time. But, in fact, there were evidence almost entirely from the plaintiff's side that there were physical limitations on his ability to pirate imposed by them. Shut off the card that he was using completely to issue a new card to somebody else. They never had any evidence that he ever possessed any other card than that 1.2 card. What they said at trial was, well, they were available. Well, he could get his hands on one. He could get his hands on a gun. We don't know what he could get his hands on, but what we do know is that's the only evidence they presented. So there was no factual basis for the judge to make this ruling. Now, as far as 605B4... How long do you think it should go, $100 a day? Here's what I think that you can do. I think that this Court can say, and it's kind of convoluted, I think, at a minimum, this thing should be cut off in October of 2002, at a minimum. Because at that point, the hacked card that he had was completely useless. And that's the evidence that I get from DirecTV's own expert report stipulated in by previous counsel on Supplemental Expert Record 7374. Now, DirecTV will have to argue at that point that that shouldn't be the cutoff for him to access further devices, but this is very easy. The facts show you that he stopped purchasing devices as of December of 2001. So he stopped purchasing devices prior to October of 2002. The record shows that Mr. Rissler testified that those devices were usable for P2 cards. That's it. And the P2 card was shut off in October. They don't show that Mr. Webb had any other cards, no successive generations of cards, no ability to pirate after that. It's all speculation. And that's what you'll hear. You'll hear, well, he could have got this and he could have got that. Well, he could have, but he didn't. How many days would that be? I did not do the day calculation from August 31st, 2000 to October of 2002. So I do not know how many days that would be, Your Honor. But I will submit a supplemental calculation. We could get five or six hundred. Got more than a year, a year and some odd months, five or six, we can figure it out. That would be the day. Now, whether DirecTV, the other back side of that argument or the flip side of that argument is the question of whether they can get damages for violations that extend beyond the two-year statute of limitations. Now, this is different than the 605 case. 2520 gives you a two-year statute of limitations. It's expressly in the statute. So the question at that point is, DirecTV finds out on May 25th, 2001 that there's violations occurring. They sit on the evidence for almost a complete two years, and at the last second, on May 23rd of 2003, they file the case. So the question then becomes, what are they entitled to as damages? Everything going all the way back to August of 2000, I submit that they're only entitled to the damages that go back to May 25th, 2001 rate. And the reason is they voluntarily sat around on this stuff until May 23rd, 2003. And I understand why they had over 24,000 cases eventually got filed, and I understand that they filed them in droves in order to be within the statute of limitations, but in this case, you've got a two-year statute. So being able to collect on stuff that goes all the way back to August 2000 does not seem to fit with the intent of the statute. And although most of these statutes are not applied in this fashion, DirecTV was kind of unique the way that they did it. They ended up with draconian damages being inflicted on people like Mr. Webb, who did not, where they didn't even actually suffer anywhere close to that type of damage, even if he had paid for all the signals they claim he stole. Now, on the 605E4 argument, I leave that up to my counsel, Mr. Apker. I guess better be a real fast talker. I've got 20, 21 seconds. May it please the Court, Rob Apkith for Mr. Webb. I can make this very quick argument for you to consider. Quite frankly, it's very clear. DirecTV does not have standing under 47 U.S.C. 605D6 to bring a claim for a violation of E4. It doesn't have standing specifically and precisely because Congress does not intend it to. The Supreme Court held in the case of Doe v. Chau that we may look to the failure by Congress to enact specific legislation that addresses an issue as an indication of Congress's intent. In this particular situation, at least four times... Is there any logic behind the position that Congress intends to let people swipe signals from direct satellite purveyors? Absolutely none, Your Honor. We don't contend that DirecTV does not have standing to allege claims under 605A and recover liability damages on that basis. Why are they any less a party aggrieved? I mean, talk about standing, and maybe you're intending to turn to me something broader. But I don't have any difficulty with the notion they have standing. There may be a question as to whether E4 reaches the conduct that Webb is accused of, but standing, DirecTV is surely an aggrieved party if it's their signal that's being intercepted. Well, I believe for 605A that's not in dispute. Certainly for 605E4 it is. Congress apparently does not believe that providers of direct-to-home satellite services have standing to bring claims for violations of 605E4. If it did, it would not have on four occasions considered amending 605D6 to extend civil liability for violations of 605E4. I'll go back to the question I posed. What's the logic? Why would Congress say no to that? And there are lots of reasons that don't help you, such as they think it's already covered by the statute, they haven't contributed enough via the right lobbyists, who knows what. But what makes you think there's a considered decision by Congress not to let somebody in DirecTV's position proceed with a claim under E4? Well, I think it's because of the range of damages, while it makes sense to extend liability for people who are violating or intercepting cable broadcasting, because when the statute was enacted and modified in 1988, there was a plethora of cloned boxes for cable reception that were being manufactured and sold and inflicting damages on legitimate manufacturers of those devices. That's not true with direct-to-home satellite. To intercept a signal at a cable head for subsequent rebroadcast to cable subscribers is an infinitely greater violation on an interceptive basis than it is for a single individual to do a similar thing with direct-to-home services. Because of the damages component being so high, it's clear that Congress did not intend for those degrees of damages to be inflicted on a single individual, and therefore, somebody who would be intercepting a cable head would be inflicting greater damage and should be held to a greater degree of liability. Well, I guess I'm not sure I follow that, because people that were picking up signals, I mean, okay, I live in Hawaii where we have pretty much cable service. It's only very recently that the direct services have reached that far west. So I'm not as familiar with those, but I've never heard of anybody going into his own cable business, that is, picking up the signals that are intended for Pine Warner Oceanic Cable and setting up his own cable company and distributing them to others. The interception cases are always really personal use cases, which is exactly the same thing that Mr. Webb is charged with.  E4 speaks to either or both of somebody who's higher in the food chain or somebody who's doing something to decipher, to decode. I mean, A doesn't require deciphering. E4 arguably does, and so you can argue that modification, as that word is used in E4, gets to somebody who tampers with equipment in such a way as they're going to be able to pick up a signal they're not supposed to pick up. I mean, there's nothing hard about picking up the signal itself. Anybody got a satellite dish, but it's the breaking the code part that E4 may be intended to reach, and Mr. Webb is accused of breaking the code. So why would you say that Congress has made a considered judgment to let people break the code in E4? I mean, it just seems unlikely that Congress would make that considered judgment. Well, I don't see that that's what 605E4 addresses as a decryption. It goes more to the manufacture, distribution, sale, assembly, modification of devices. And so obviously Congress envisioned that people who would be manufacturing these types of devices would be doing this on a large scale, as they did during the heyday of the cable clone boxes. And that's why it specifically says satellite cable programming when it references standing for claims under E4. And Congress has considered adding direct-to-home satellite services, so Congress clearly makes a distinction between the two. And they have to E4. I mean, E4 itself makes reference to direct-to-home satellite services. It does. And again, E4 is a criminal statute, but in order to get as far as being able to make a claim under E4, a party must first have standing as an aggrieved party under one of two sub-provisions of 605D6. The first one is they must have a proprietary interest in the intercepted signal, which there's no dispute here, DirecTV does. And for that interception, they have a remedy under 605A. But then the language goes on to say, and in the event of a violation of paragraph 4, 605E4, must also be a manufacturer, distributor. Not must also, shall also include. And that's where I trip here, because this says, okay, you've got this group that's covered, and then with regard to E4, you've also got this group that's covered, and then with regard to E4, you've also got this group that's covered. And so the first group doesn't have standing anymore. I just find it very difficult to understand how DirecTV could not be a person aggrieved in some fashion. It doesn't say only the manufacturers of cable boxes have standing. It says you've got this group, and then on E4, shall also include. That suggests adding on to the first. It does, however, in this particular case, Congress has expressly considered adding direct-to-home satellite services. And by not enacting it, relying upon Doe versus Chow, we can safely infer and accurately infer that Congress does not intend to extend that standing for claims under 605E4 to direct-to-home satellite services. Thank you. Good morning, Your Honors. May it please the Court, my name is Howard Rubin, representing Plaintiff Cross-Appellant DirecTV. This appeal arises out of Judge Wilson's finding of liability under two federal statutes, the Federal Communications Act and a part of the Federal Communications Act. And what Judge Wilson concluded was Mr. Webb violated two aspects of these statutes, not only for unlawful interception, but also for being engaged in the business of distributing, modifying, assembling, selling pirate access devices. I would like to do two things, Your Honors. I want to focus most of my attention on the question of what statute of limitations applies to claims under 605, the only issue that we ask this Court to reverse the district court on. And then I want to address briefly each of the flaws that Mr. Webb finds in the district court and show you why you should affirm in all respects but that one question of the statute of limitations for 605. With respect to the statute of limitations issue, this is what the district court got wrong. He had to determine what statute of limitations should apply to 605 because none is found in that statute. And he had to look to either federal or state law. The district courts in this circuit are split on this issue. In a list of additional citations I provided the Court last week, I identified a court in Oregon, Oregon District Court, and I don't know if those citations made it to the Court yet. But the Oregon District Court as well as the Arizona District Court, which is cited in our briefing, have both gotten this question right. They have concluded that the two-year statute of limitations under the Wiretap Act should apply to claims under 605. And I'm going to point out four mistakes in Judge Wilson's analysis. First, we should start with the state statute of limitations. And here what the district court found was the analogous state statute was the California piracy statute. I point out to the Court that that piracy statute itself has no statute of limitations. And there is no reference in the piracy statute in California to a statute of limitations. But it's very, very common with regard to state law. I mean, few states that I've seen, and I've now dealt with cases from, what do we have, nine states in our circuit, and a whole lot from California, it's pretty common to have statute of limitations mostly concentrated. It often happens, Your Honor. And the fact that it doesn't have a statute of limitations in and of itself isn't a reason why you should go with the two-year statute of limitations under the Wiretap Act. It's one of the most important Supreme Court decisions for you to look at on this. And this Court, in the Sherwood case, said that when they were trying to make a comparison to find the most analogous statute to use, either federal or state, both in Sherwood in the Ninth Circuit and in Mally Duff, the courts rejected using a catch-all statute of limitations and went with a law that was more closely analogous than a statute with just a catch-all. And that's for the following three reasons. Number one, there is a very close nexus between 605 and 2511. The district court at page 43 of Mr. Webb's record excerpts said that these two statutes, quote, address completely different behavior. That is not consistent with this Court's decision in land, which we cite in our briefing. In land, this Court made clear that 605A and 25111A both prohibit the unauthorized interception of satellite communications. And if you look at land in particular, at pages 912 and 913 of that decision, the Ninth Circuit cites legislative history from both statutes, both from 605 and 2511, which acknowledge that the other statute is out there to do the very same thing. This is a unique instance where you have two Federal statutes that are aimed at accomplishing the same thing, which is providing civil enforcement to try to eliminate or at least enable damages for a company like DirecTV whose signals are intercepted. So the reason I raised, Judge Clifton, the catch-all was to take the California piracy statute and compare it to what we're offering up as the most analogous Federal law, which has a very close nexus to 605. The third point, though, is that satellite piracy demands a national solution. And, Judge Pragerson, you wrote one of the two most significant decisions that we cite in our briefs from this Court on this analysis of Federal versus State statute of limitations. It was the Sierra Club case from 1987. And in that case, what you were confronting was what statute of limitations meant for the Clean Water Act. And what you recognized in that case, what the Court recognized, was that the Clean Water Act had a need for a national enforcement regime. And, as a result, it made sense because there was a national policy of trying to address the need to enforce the Clean Water Act and to complement the EPA's regulations that, as a result, it was important to adopt a single, uniform national statute of limitation by turning to a Federal statute of limitations. And I asked the Court to look at the legislative history we cited about 605. At our briefing, in our opening brief at page 34, we cite legislative history from the 1984 Cable Act. That's the part of the legislation that amended 605 to cover the stealing of electronic communications. And Congress said that issues affecting the cable industry are national in scope and that there's a need for a national enforcement regime. That's quite similar to the kinds of concerns that were motivating this Court in Sierra Club when it chose to go with a single, uniform statute from Federal law. The other thing I would point to in this regard, Your Honor, in choosing between a Federal and a State statute, is I'd ask the Court to look at two Supreme Court decisions which we cite. North Star, which is the Supreme Court's most recent analysis, and then Duff, which is a few years earlier from, I believe, 1987. They offer a very clear contrast between when you should go with a State statute of limitations and a Federal statute. North Star. That was a case where there were employment claims arising out of a single plant closing, mass layoffs at one plant. And there, the Court in North Star, although recognizing there's an interstate law, then you have the instance of Malley-Duff. That's the other Supreme Court case. There, the question was, what statute of limitations should be applied to RICO? Because RICO didn't have its own statute of limitations. And the Court in Malley-Duff, in choosing a Federal statute of limitations, in going with the Clayton Act statute of limitations, said that we recognize that RICO actions involve interstate transactions, and they are multistate in nature. That's exactly the situation here. Not sure. Let me pause on that. Because I understood Malley-Duff. It talks about RICO. The predicate acts for what amounts to a single RICO violation can come from several States. And in this case, you may have people who are intercepting or who are unlawfully modifying equipment in several States, but each of them are doing it in a single State. There's no question or concern that Webb was doing it in California and Nevada and Oregon. Whereas I took the Malley-Duff decision to speak of the concern that the predicate acts for a single lawsuit, a RICO lawsuit, could be in lots of different places. Your Honor, I would argue that RICO and Malley-Duff is an even stronger instance than this case, because you're right. There are often predicate acts that require interstate transactions. And it isn't necessarily the case that in a case like a DirecTV lawsuit that you necessarily have interstate transactions that are predicate acts. But if you look right after, two sentences after that statement by the court in Malley-Duff, I think that the Malley-Duff court is talking more broadly than merely when there is an interstate transaction that is a jurisdictional component. It recognizes that there's a multistate nature of RICO. And I'd submit the same thing happens here, Your Honor. See, I don't think so. It's certain from DirecTV's perspective, it's multistate. But anybody who's a national manufacturer or distributor or something is dealing countrywide. But the violation is by the defendant. And the defendant's not multistate. He's sitting where he's sitting. But, Your Honor, the allegations under 605 are broader than just individual interception. This case here today isn't just about a man who bought one device and decided to steal a signal in his home. The district court found, as a matter of fact and law, that this man engaged in the business of purchasing these devices and then distributing and selling them. We would submit that it is just as possible that Mr. Webb's illegal activity involves the purchase of one device. It involves interstate commerce and interstate transactions. I hadn't thought about that part. Is there any evidence in the record with regard to where he, where the devices went to? There's no evidence as to where they go to. But I'd refer to a point you made earlier. Just like we can't peek into his window and find out where, what this man was watching and precisely when he was watching, I'd submit that it wasn't possible to know necessarily what he did with all these devices. But I think the problem there is that you can infer most TVs go on. I don't know that you can infer that most pirate devices that this guy is distributing, because he's a fairly low-level operator at 57, I don't know that you can infer that he sends them to other states. No, but I don't think that it should be a burden of proof on DirecTV to have to show that he necessarily sends it to other states. But if he doesn't, then how is this a Mally Duff problem? Because I think Mally Duff stands for more than simply that you have to show a predicate interstate act. For example, the PAPA case, which is a Ninth Circuit case, and I believe it's your most recent analysis of this question, of whether you borrow from state or federal law. And again, it's also cited in our briefing. There, this Court relies on North Star, and the Court says, we normally go with the state statute of limitations, but not when three things happen. And I would submit that in light of the legislative history, from both 2511 and 605, showing the interplay, and Congress's recognition that these statutes are doing the same thing, that in this instance, this would be an even stronger case than Mally Duff, for example. No, I should say, I'm not sure that shows a closer analogy than the state statute. I mean, the state statute seems pretty much right on. It covers exactly the same unlawful conduct. Now, it's true the state statute of limitations comes from a catch-all provision, but the state statute itself, it seems to me, the state, this state has a piracy statute. But the question is, when you look, and we cite some of these in string cites in our brief, to the fact that states around the country have one-year or two-year or six-year or four-year statute of limitations, and you recognize that this isn't, for example, the single layoff at one plant as in North Star, I think that this is an instance where practicalities of litigation, which is another one of the elements that this Court in Pappas said are significant, come into play. So DirecTV is not arguing that the California statute bears no resemblance to 605. Of course it does. At some level, it's a piracy statute. Well, if you apply the Supreme Court's test, it seems to me the first step you just identified, the answer I heard you suggesting isn't the answer I now hear you say, because the comparison needs to be made with the, as I read the Supreme Court's standards, the first comparison is between the state statute pertaining to the unlawful conduct. And here that, to me, is a pretty close fit. And that's where you look. But I'd urge you to look at the Pappas decision from this Court. And analyzing it under North Star, which it cites in a footnote, it says that if the statute from Federal law provides a closer analogy, and there are Federal policies at stake, and the legislative history of 605 says. It isn't really a closer analogy. The first step isn't really the same. Your Honor, Judge Huck, I think it is. And maybe I'm influenced by the fact that I've read very closely the legislative history from 605 and 2511, and Congress is commenting in amending these provisions about how these two statutes are trying to go after people or create what? I mean, if we go back to what you just read in Pappa, that's where it really kind of stopped you. Because I understand the Supreme Court's test to say, is the Federal analogous statute closer than the state analogous statute? And we've agreed the state analogous statute is dead on. It's a piracy statute. It's a piracy statute. So how can you even talk all you want about how the two Federal statutes are more closely related than Judge Wilson said? But I still don't see how they get to be closer related than the state statute. I take your point other than the fact that Congress says we're trying to, we're amending 605 to offer an additional remedy just like 2511. But, Your Honor, I think it's more than just that. Consider the practicalities. And we raise this in our briefs, and Mr. Webb doesn't respond. And it's an issue about res judicata and the practical consequences of what happens if a one-year statute of limitations is applied to the 605 claim. These claims clearly arise out of the same transaction or occurrence. We're using two Federal statutes to go after someone who we believe violated Federal law by stealing DirecTV's signal and engaging in the business of distribution. If a one-year statute applies to 605, it leaves DirecTV with this choice. Either it has to forfeit the second year it is entitled to under 2511 and bring its 2511 claim right away at the same time as the 605 claim in one year, or DirecTV has to forego its claim under 2511. Because if it were to proceed just with the 605 claim? I'm not sure. I hear the argument. And that's the McAllister case and Del Costello. The facts in McAllister are pretty far removed from this. They are. So I won't try to go there. I understand. But I thought about that for a long time. I understand it on one level, but I also, I say, but you've got the same problem with regard to the state statute. To the extent that you want to use the California piracy statute and add that to the list, you're obviously not arguing that we ought to extend the statute of limitations for that to a second year because of this federal right, but no. But the problem is similar. Statute of limitations are there. You make judgments. The fact that there may be a longer statute of limitation for one cause of action than there is for another does not ordinarily lead to extending the shorter statute of limitations. Now, in McAllister it did. And Del Costello. And Del Costello is more recent. Which isn't as different than the Maritime case. I grant you that. And so, I don't know that McAllister type cases are there. But it's not true as a general principle that you look to what the longer period is. Just the fact of life is you've got your causes of action, you make your litigation judgments, and you proceed with what you've still got in your hand at the time. Agreed. But when we're in this rubric where we're analyzing whether we go with a long risk signaling that these two are interrelated and you recognize that this is a national problem. Again, if you put it on the spectrum of the single plant layoff or a single civil rights infringement as to one person or something that, of course, is multi-state in nature in the sense that we have 24,000 cases and DirecTV having to make judgments about where it's going to file suit and how quickly it files suit, it strikes me that this is a case where you would go with the federal statute of limitations. You're mentioning res judicata. How does that work into this? In the sense, Your Honor, that if the one-year California statute of limitations applies, then if DirecTV did not bring its claim under the Wiretap Act and only brought its 605 claim and that went to final judgment, I recognize that DirecTV would probably be barred under res judicata principles from bringing a subsequent lawsuit for a violation of 2511 because these two federal statutes are basically attacking the same transaction or occurrence. So that's why I raise it and both McAllister and DelCostello say we won't deny a litigant the full benefit of federal law and I think that's a further reason why you would create a uniform decision here. I think both Sierra Club and PAPA, two Ninth Circuit cases going with federal statutes, are ones to look at closely in that regard. Well, if it's a one-year statute of limitation, it puts too much stress on your legal department. Your Honor, that is part of it, practically speaking. Piracy by nature is surreptitious and Congress recognized it didn't have the manpower. Talk about burdens. Congress concluded that the federal government didn't have the manpower to be the entity that would try to enforce this law by itself. And as a result, under 605, it created civil actions that companies like DirecTV could use. And I would submit that when a signal is stolen and you have a national problem with 24,000 potential pirates, I'm concerned that we would be, there's a risk of flooding the courts even more if DirecTV had to throw even more lawsuits into court before it could complete its investigations because it was worried that it had to be a one-year period. But I would submit, Your Honor, that with the volume of this problem, that one year to confront this national issue wouldn't be long enough and it makes sense to marry it up with the two-year statute of limitations under the Federal Wiretap Act under ECBA. I want to understand a little bit further about the res judicata. Are you saying that a decision under 605 would, by virtue of claim preclusion, prevent a suit under 2511? Yes, I would. I think there's a real risk of that happening. At least DirecTV would be at a serious risk of that argument being made against Mr. Webb. It's a whole different claim under a whole different statute. But I think, I don't want to make the argument for my opponents, but I think that reasonably, defendants would say, wait, both of these claims arise out of the same transaction. You're using the Wiretap Act now to sue me for my unauthorized interception of your signals, which is just what you did in your first lawsuit under 605. I think that DirecTV runs a real risk of not getting the full benefit of Federal law. Might be issue preclusion, huh? Issue preclusion is when you have an issue actually litigated with the same party and you're right, Your Honors, it may very, I think courts sort of blend res judicata, collateral, estoppel, and. All the time. You couldn't split your causes of action and you'd be exposed, I guess, and I don't know how viable that is, but that's the potential risk. Let me just mention something about the consequences and then hopefully get a couple minutes to respond to Mr. Webb's arguments. The consequence of your reversing on this one point is that we would ask the court to remand to the district court for a finding of damages for the violations of 605E4. Judge Wilson, because he found the continuing violations doctrine applied, he gave us damages for one violation of 605E4. If, however, a two-year statute of limitations applies, we would then go back on remand for damages based upon this distributor of piracy devices for violations on 605E4. $120,000-some isn't enough? You think you're going to collect this? Not necessarily, Your Honor, but if I could have a couple minutes. I know they went over. I'd like to just briefly and succinctly give you a couple of responses on their requests, okay, including 760 days, which is the number you were looking for before. But I'll get to that in a minute. There were four arguments Mr. Webb made. The first one was on continuing violations. Point number one is this court does not need to reach the continuing violations issue if you conclude that the two-year statute of limitations from the Wiretap Act applies. However, if you do reach that question, here are just a couple of reasons why the statute of limitations applies. Number one, I'll just go to your point, Judge Clifton, and I can then move on if there aren't questions on it. This isn't a single bank robbery. This is a series of ongoing illegal acts, and I believe that the O'Loughlin case from this court that we cited in our briefing is probably the only case you need to look at. Although it arose in the civil rights context, what the court said was the continuing violation doctrine applies when an injury stems from ongoing illegal acts, and that of course is what happened here by virtue of this series of purchases and distributions that Judge Wilson found. The only other point I'll make on continuing violations is that it's an equitable principle. Judge Wilson at the end of the trial said that he found Mr. Webb's story totally incredible. He found the story disturbing, and he said that Mr. Webb's appearance and demeanor created a stench. I haven't practiced law in front of Judge Wilson, but I can't imagine any district court judge being that specific and going to that length to make clear how incredible he found a party's story. And we don't believe that Mr. Webb's other illegal acts should be insulated from our being able to pursue claims because a statute of limitations got cut off. With respect to the person aggrieved issue, which is what Mr. Apgood spoke about, I'll only say a couple of things unless you have other questions. This question is whether or not a direct-to-home satellite service provider is a, quote, person aggrieved under 605 D6. In the citations I submitted last week, I gave you the citation to the Fifth Circuit's case in DirecTV v. Budden. It's a decision that came out after we finished our briefing. Mr. Webb is effectively asking this court to create a circuit split with the Fifth Circuit in Budden and the Sixth Circuit in Eliottis, which we did cite in our brief. We see no basis for claiming that we don't have standing here. And really, Mr. Apgood's argument comes down to only one point. He said Congress chose not to amend the statute to add direct-to-home satellite service providers to D6. Your Honors, I would submit that maybe the reason Congress didn't do it was it didn't feel it was necessary to do it because, as you pointed out, Judge Hugg, a person aggrieved is to flag your decision in FTC v. MTK Marketing. This Court said that the word include is a term of enlargement. I don't believe that the word include in 605 D6 was there to provide an exhaustive list. I believe it was just a term of enlargement offering up examples. With respect to the findings of fact, and this gets me to the damages point, Judge Hugg, you asked a question about this. Mr. Zakarian spent most of his time challenging I think he was challenging the findings of fact and the damages award. On the findings of liability, I don't think there's any question. This man bought 57 devices over a year and four-month period. He was found to have engaged in the business of distributing these devices. On the damages, Your Honor, even if the District Court should not have had damages go beyond October 2002 when the P2 card had its stream shut off and the next generation of cards began, that would be 760 days. I did do the math at my office the other day. If you are applying damages for interception $100 per day from August 31, 2000 and we did the math again at our desk here, I think we were right. If you take $100 a day from August 31, 2000 until September 30, 2002, I gave him the benefit of the doubt and assumed no piracy in October of 2002, that would be 760 days or $76,000 as opposed to the $123,000. But let me make one other point about the damages clear. This man did two things wrong. Number one, he violated two federal statutes by intercepting this transmission. But the second thing he did which is a distinct illegal act is violate 605E4. Judge Clifton, you were focusing on the distinction between those two provisions. Whatever happens in terms of a remand on damages, potentially to modify at some level the damages under 2511, we believe that there would be a remand for damages under 605E4. Whether or not we can collect from Mr. Webb, the truth is I don't know. But Congress gave DirecTV this distinct arsenal for people who are engaged in a business that goes beyond just buying one device and What would the effect be if you are correct that the 2000, that the statute of limitations is not one year, but another year. Fair enough. Right. What is the consequence? What will happen in this case? What will it look like? If a two-year statute of limitations applies, this is what I believe should happen in the case. You'll remand and there might be some modification on the 2511 damages, maybe a lowering at some, at the margin from the $123,000 to the $76,000. Your Honors, I would suggest this, and Mr. Webb's counsel didn't say this, I'm not entirely sure that we're entitled to the $1,000 that we got for one violation of 605A. DirecTV, it might be equivalent, but I'm just trying to be consistent with the Supreme Court here, which is 605A and 2511-1A are designed to try to minimize potential interceptions. And by having received damages under 2511-1A, we wouldn't be asking on remand for any further damages for 605A. The only other thing that would happen, Judge Hugg, is there would be a damage award for 56 additional devices for violations of 605E4. We already got one. Judge Wilson, applying the continuing violations doctrine, gave us one. That would be an award of $560,000. That is a lot of money. That is precisely what Congress envisioned. When someone buys a device that doesn't merely give them the ability to steal the signal for themselves, but allows them to modify cards and make profits by doing it for other people, that's what every one of these devices he bought gave him the capability to do. This was not an individual end user. This was a man in the business of piracy. For that one, if the one-year statute of limitations applies, I didn't pursue this, but I was puzzled a little bit because what he did as a distributor, he did Potentially going forward. That's for sure. He obtained the 57 devices. He presumably distributed most of them to other people. But I'm not sure he's got a continuing violation for having kept and continued to use one. That's right. But again, draw a distinction, if you would, between 605A, which is going after him for using it for his own piracy on his own TV, and 605E4. He bought these 56 devices over the course of 18 months. And there's nothing that suggests that he wasn't in the business of continuing to modify cards with these devices for other people. Modification is a violation of the statute of limitations. So it doesn't suggest that he didn't distribute these devices going forward. Well, maybe. But again, I don't think the inference is quite the same as turning on a TV. It may not be a bank robbery that happens one finite time, but if he's gotten 57 devices, you don't assume that forever he's in the business. And how long it can stretch after his acquisition of them before he's got them all redistributed? But here's the answer. As a timing matter, I'm not so sure. Long enough to distribute all of them, though. And it's more than just an inference. We have a finding, a fact, and a conclusion of law from Judge Wilson below saying that he was in the business of distributing with respect to all of these devices. But was he in the business within the one-year period if a one-year statute applies? I guess I'm holding out hope for that two-year statute. I understand that. But if you're not, but if we're, and I believe you'll find that after reading Land and Papa and Sierra Club, but if it is just a one-year statute of limitations, this lawsuit was filed on May 15, 2003. And so if we were allowed to only have a one-year statute of limitations, that means we could only be capturing devices that or illegal acts, I should say, from May 15, 2002. Fifty-three of the 57 devices that he bought were bought within two years of May 15, 2003. And my problem is, it seemed to me by picking one, Judge Wilson was treating it the same as, well, he's got one that he's using. And I think that might not necessarily be right. And that doesn't seem to fit for a distribution offense. That's right. I think that Judge Wilson thought one, I'm not really sure, there wasn't really much analysis on that point, frankly. And if, in fact, this man was doing something more than just pirating for himself and was in the business, as Judge Wilson concluded, then I would suggest that you would get more than that because there would be no principled basis for just limiting it to one. Which is why I guessed that he picked one because he figured, well, he's got one that he's using. But this isn't the using offense. No. And I don't have an explanation for why he picked one. No. But I think it would be appropriate to remand, frankly, for a reconsideration. That's for the district court to do. But you didn't appeal on that basis. I'm sorry. All you appealed was on the statute of limitations. Right. We appealed on the statute of limitations. So if you were to reject our position on the statute of limitations and find that the continuing violations doctrine applies, we think that it would be appropriate on a remand for damages for the district court to be able to revisit this. But you haven't requested that on an appeal, a remand for damages. You had bigger fish to fry, and I understand why you didn't pursue that issue. You're right, Your Honor. We didn't say that even if everything stays this way, you're 100 percent right. Thank you, Your Honors. We'll give you a minute to rebut. That's all I'll need, Your Honor. Let's see if that's true. Mr. Rubin did such a great job. I'm only going to address one thing. You asked what the effect would be if this Court were to adopt the two-year statute of limitations for 605. And what the effect will be is there will be a distinct split in the circuits, and it will go to the Supreme Court. King Vision Pay-Per-View versus 898 Belmont, Inc., Third Circuit, April 2004, 366, F. 3rd, 217, rejected the very arguments Mr. Rubin just made to you involving the exact cases, O'Malley, Duff, et cetera. So if you do that, you'll be in direct conflict with the Third Circuit. That will be the effect of it. Thank you. Well, we're used to that. Yes. Well, I know you're not scared of that. I'm just saying that will be the effect. Your Honors, I don't know that I've done this more than one other time. Can I just make one 10-second comment with respect to King Vision? Sure. I really will hold myself to 10 seconds. If you look at 366, F. 3rd, 224, Note 5. That's the King Vision case. You will note that they did not rule on 605. 605 did not apply to that and you would not be creating a circuit split. The King Vision case was a two-year case. They went with a two-year Pennsylvania statute, which then ended up, which would be fine for us in this instance, but 605 wasn't applicable there. There would be no circuit split. Thank you, Your Honors. Well, we enjoyed the argument and probably as good as direct TV, huh? We're going to recess now and we're going to hear another case where Judge Gould is on the panel and he's in Seattle. We're going to do that in chambers with our video conferencing. We may have it set up here. What? I think they've got it both places. Oh, okay. We can come back in here. Check the source of our signals.
judges: Hug, Pregerson, Clifton